## Leiby *v*. Clear Spring Water Company, Appellant.

*Eminent domain—Damages—Competency of witnesses—Elements of damage—Water companies—Evidence.*

Where in an action to recover damages for land taken by a water company under its right of eminent domain, witnesses called to prove the damage, disclose a familiarity with the premises and values of land in the community they are competent; and where a spring upon the land of the plaintiff is taken, a witness called in his behalf may testify as to the specific damage resulting from the taking of the spring.

*Water companies—Rights acquired by purchase of water rights—Spring —Eminent domain.*

An upper riparian owner conveyed part of his land consisting of a mill and its appurtenant water rights, with a provision in the deed that the vendee should have the right to have the water of the stream flow unobstructed through the vendor's other land, above the mill to the vendee's land, in the accustomed or natural channel, that the vendor would not use the water for "watering and improving the meadow ground," and that the vendor should not erect a grist or sawmill on the land owned by him. A water company thereafter acquired the mill and its appurtenant water rights. In a proceeding by a subsequent vendee of the land above

the mill against the water company to assess damages for the appropriation of her land, *held* that she was entitled to have considered as an element of damage, the value of a spring upon her land near the stream, as affected by the right of the water company to have the water from the spring flow undiminished to its land, in the channel of the creek, as the other water did.

Argued Feb. 2, 1903. Appeal, No. 111, Jan. T., 1902, by defendant, from judgment of C. P. Lehigh Co., June T., 1901, No. 45, on verdict for plaintiff in case of Rebecca S. Leiby v. Clear Springs Water Company. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from assessment of damages. Before DUNHAM, P. J., of the 44th judicial district, specially presiding.

At the trial it appeared that the defendant company had purchased a mill property with certain water rights upon lands of other persons, all of which lands affected by the water rights, were purchased by it excepting the land of the plaintiff. In the construction of its dam and works it was necessary to swell the water upon a portion of the plaintiff's land and for this purpose condemnation proceedings were instituted. The water power for the mill property was supplied from a creek and part of the water came from a spring on the plaintiff's land. John Deichman had been the common owner of all the property acquired by the defendant by purchase and of the land of the plaintiff and while so the owner he conveyed the mill property to plaintiff's predecessor in title, the deed for it containing the the following provision: "Together with the liberty and privilege to the water in the creek which running through the said John Deichmans other land adjoining the above described piece, so that the said John Deichman, his heirs and assigns, shall not obstruct or lead the said creek from its present course or take water out of said creek for the purpose of watering and improving the meadow ground except by the permission of the said Abraham Yellis, his heirs and assigns, and said John Deichman, his heirs and assigns, shall not erect a grist or sawmill on the said creek on the said land owned at present by him."

At the trial William Yellis, a witness called by the plaintiff, being upon the stand, was asked:

Q. Have you knowledge of springs in this neighborhood?

A. I have knowledge of the works I am working at.

Q. Do you know of springs that were bought recently in this community?

Objected to by defendant as incompetent and irrelevant.

The Court: We will allow that going to the question of his knowledge. (Exception for defendant.)

Mr. Dewalt: Now I propose to ask the witness whether he has a knowledge of the value of the big spring on the Kratzer farm.

Objected to by defendant as incompetent and irrelevant.

The Court: We will admit that and note an exception for the defendant.

Q. What in your judgment was the big spring on the Kratzer property worth?

Objected to by the defendant as incompetent and irrelevant because the witness upon examination in chief upon a question like the one now trying cannot be asked to give values as to any particular part or portion of the property taken, the test being the market value of the entire tract before the taking and after the taking. Also for the reason that the witness has shown no knowledge of the value of springs except two, the one in the city of Allentown and the other in close proximity to it, while the matter now for determination is a tract of land and a spring located many miles away from Allentown or any other city or town, and that therefore the witness has not shown sufficient knowledge of the value of the springs in the locality and under surroundings as connected with the matter in question.

The Court: We think under the ruling in McKelvy's case that this is one of the means of finding the damage that the plaintiff has sustained. Of course the true test is as stated by counsel.

Exception for defendant. [1]

O. P. Leh, plaintiff's witness, was asked:

Q. Where do you reside? A. Near Egypt, about one mile north of Egypt.

Q. How long have you lived in that section? A. Eighteen years.

Q. You are acquainted in that section, are you? A. Somewhat at least.

Q. Do you know this Leiby farm? A. Yes.

Q. Have you been on it? A. Yes.

Q. You have heard of sales in that neighborhood, have you, in the last two or three years? A. I have.

Q. Can you mention any? A. Schadt's sale, Shafer's, Koch's.

Q. You know also what you bought? A. Yes.

Q. Those sales occurred within a near distance of this Leiby farm? A. Yes.

Q. Do you know that there is a spring on this farm? A. I have seen it once, that is that big spring.

Q. That is near the house along the creek? A. Yes, sir.

Q. Were you at the spring? A. I was there once.

Q. Did you see any limestone quarries there? A. I saw, yes.

Q. Have you any estimate upon springs? A. Of course I can estimate my spring, I have a spring of my own.

Q. You say you heard these various sales. From your knowledge of these can you form an opinion of the fair market value of land in that section? A. Yes, sir.

Q. Now you say there was limestone on the Leiby farm, the spring on it, what in your judgment was the fair market value of that farm in 1899? What would it have brought at a fair public sale?

Objected to by the defendant for the reason that the witness has not shown sufficient knowledge of the value of real estate in the vicinity of the land in question.

Objection overruled and bill sealed. [2]

William Frederick, one of the plaintiff's witnesses, was asked:

Q. You live in this neighborhood, do you? A. Yes.

Q. How long have you lived there? A. Eleven years, going on twelve.

Q. Do you know of property that was sold in that neighborhood? A. Yes, sir, I know some.

Q. What properties do you know that were sold? A. They were all mentioned I know of. Of course I would not like to be examined on the question of price.

Q. What properties do you know of that were sold there? Do you know the Kieffer farm? A. Yes, sir.

Q. Do you know the Shafer farm? A. Yes.

Q. Do you know the Schadt farm? A. Yes.

Q. Do you know the Kelchner farm? A. Yes, sir.

Q. The Koch farm. Do you know that that was sold? A. Yes, sir.

Q. And the farm that was sold to the Whitehall Cement Company? A. I don't know much about that.

Q. Did you hear the prices at which these other farms were sold? A. Some of them.

Q. What did you hear as to the prices of any of these farms? What farms did you hear of? Don't mention the price. A. Shafer's, Koch's.

Q. And Kieffer's, did you hear that? A. No.

Q. Shafer's, did you hear? A. By hearing.

Q. That was farm land, the Shafer farm? A. Yes, sir.

Q. How about the Koch farm, did you hear that? A. Yes.

Q. That is farm land, too? A. Yes, sir, limestone."

Plaintiff proposes to ask this witness from the knowledge shown, what the value of this place was before the 15 acres and 114 perches were taken, at a fair public sale, and what it was worth afterwards.

Objected to by defendant because the witness has not shown sufficient knowledge of the value of real estate in this vicinity; has not shown that he is the owner of real estate.

The Court: Q. From your knowledge of this farm, and from the sale property in the vicinity, are you able to form an intelligent opinion as to the market value of the farm in 1899? What the actual market value of that farm was? A. It is pretty hard for me because I am not in the real estate business. Q. Whether it is hard or not, can you do it? A. I could form an opinion.

The Court; Objection overruled and bill sealed for defendant. [3]

John Billings, a witness called by the plaintiff, was asked:

Q. Have you known of water power being bought and sold, that is, springs being sold and bought for water power? A. Not that I could remember.

Q. Do you know the value of land in this section? A. Well, yes.

Q. Do you know this meadow land? A. Yes.

Q. What sort of meadow land was that, good, bad or indifferent? A. Good meadow land.

Q. About how many acres were there? A. About four acres as near as I could tell.

Q. How many properties do you know that were sold in this community? A. I know some.

Cross-examined by Mr. Diefenderfer:

Q. How many properties have you bought and sold within the last five years? A. None.

Q. Are you the owner of real estate? A. No.

Q. Have you owned real estate within the last ten years in that section.

Objection to by plaintiff as incompetent.

The Court: The criterion is the market value, and a witness can know that without being the owner of real estate, as well as by being an owner.

Q. What properties in this vicinity within a mile of this place, farm land, do you know that have been sold within the last five years? A. Albert Ritter.

Q. How far away is that? A. Right at it, adjoins.

Q. How many acres was that? A. Twelve acres.

Q. What other properties? A. I don't know any more within a mile.

Q. What others do you know within a mile and a half? A. Shafer's and Kelchner's, but I don't know whether Kelchner's is sold, I guess not.

Q. What others do you know? A. I guess that is all.

Q. Have you given any attention to the market value of real estate in this section for the last five years? A. Yes, I was at some places.

Q. Have you given any attention to it? Have you concerned yourself at all about sales of real estate, or values? A. I don't understand that. You have to give it in German.

Q. Have you made it a business in that vicinity to find out the value of real estate? A. No.

Q. Have you given any attention to it at all? A. No.

Q. Do you now say that you consider yourself a competent judge of the value of real estate in that section of country to testify as to what real estate there would bring at a fair public sale, taking in all the real estate in the vicinity? A. I don't.

Re-examined:

Q. From your knowledge of real estate in this locality, a mile, a mile and a half, two miles, three miles, or even five miles from this place, or ten miles from this place, that has been sold or bought within the last five years, can you give to this jury an intelligent opinion as to the value of this real estate? A. Yes.

Q. The Kratzer and Fisher farm? A. Yes, sir.

Q. What was this farm worth before this 15 acres and 114 perches was taken from it?

Objected to by defendant for the reason that the witness has not shown sufficient knowledge of the value of real estate to express an opinion, he having said himself that he could not.

The Court: We will allow the witness to answer the question. Exception for defendant. Bill sealed. [4]

The court charged the jury in part as follows:

Now as we construe that grant it simply amounted to this, that it gave to the person who purchased the mill the right to use all the water that flowed in the creek through the premises of John Deichman and now owned by this plaintiff when it came upon the lands of Abraham Yellis. It gave to Abraham Yellis no right to go upon the lands of John Deichman for the purpose of conveying that water in any other lines or by any other route than by the natural water course of the creek. And John Deichman granted that it should not be used for irrigating purposes for watering his other lands. He granted and guaranteed to Abraham Yellis and his heirs and assigns that there should be no gristmill or sawmill erected upon his premises, the remaining premises owned by him, and he granted further that the water should be given to Abraham Yellis in the full quantity that flowed there through his premises.

Even under the law, if this had not been put in, Mr. John Deichman, after he had conveyed the property below, the property that he owned, could not divert the water course so that it would enter upon the lands of his grantee below him at any different place than through the natural water course. Neither could he use the water in such a way as to appreciably or noticeably diminish the quantity that should flow in the stream naturally. So he might, if he had not entered into this contract, have changed the water course upon his premises so

that when it left his premises it left at the same place that the natural water course did. He might have used it for manufacturing purposes so long as he did not interfere materially with the flow of water upon the land of the lower property adjoining the creek. But by this he covenanted that he would not use it for the purpose of irrigating his meadow land, would not use it for the purpose of erecting a grist or sawmill upon his premises. A good deal of evidence has been given as to the value of this spring. Witnesses have testified with a view of establishing what the value of the spring was for the purpose of supplying water to the villages and towns, for the purpose of using it for a mill power, or as a water power for other purposes. You can readily see, gentlemen, that the question as to whether this spring or this creek is valuable for those purposes is a question that depends upon the rights that a person would have of diverting the water from its natural course, or of using it for such purpose.

And under the law as we interpret it neither Abraham Yellis nor John Deichman alone, or his grantees could convey that water so as to deprive the other of the use of it which the law gives them. In other words, this plaintiff bought those premises with that creek, that spring upon them. Abraham Yellis nor his grantees under the deed that they had, while they had the right to receive the full amount of water that flowed through there had no right to go upon those premises and take the water above land which they purchased. It is not like something that a person could go upon the premises and remove. The water was there, flowing, it could not be changed, and while this plaintiff could not part with that water privilege in any way so as to deprive the persons farther down the stream, Abraham Yellis and his successors, grantees, from receiving the water there in its usual flow, and the full quantity of water except what they might want to use for culinary and domestic purposes, they have a right to do that.

Every person through whose lands it flows has a right to use all that is necessary for his household, has a right to use it for watering his stock, anything of that kind, and for manufacturing purposes so long as he does not materially interfere with the flow of the water below him. And so this property had the right to have that stream of water flow through it.

Suppose the Clear Spring Water Company had come to them and attempted to buy that spring from them, they could not have sold to the Clear Spring Water Company so that they could have taken the water as they saw fit, but it must have come down to the property of Abraham Yellis below in its usual flow and quantity. And Abraham Yellis could not have conveyed to the Clear Spring Water Company the right to go upon the property of this plaintiff, Rebecca S. Leiby, and take the water away there, that is, to appropriate the property and take the water so that it didn't flow through its usual course, but plaintiff had a right to have it travel in it the same as it did before.] [5]

Verdict for plaintiff for $6,600.

On a motion for a new trial DUNHAM, P. J., filed an opinion, saying in part:

I have very carefully, and fully gone over the evidence given in this case, the rulings of the court, upon the rejection or admission of evidence, and the charge of the court to the jury, including the answers to the points presented by both parties; and I am free to say I am unable to see wherein such error was committed by the court in any of these matters as would justify my granting a new trial. The question upon which I had the most doubts at the trial, was as to the evidence of William Yellis in regard to the value of the large spring upon the lands taken by the defendant company. I am free to say my first impressions and inclinations were that this was not proper evidence. However, a more thorough and careful investigation of the authorities upon that subject, and further consideration has convinced me, that the offer was proper and legitimate evidence. Many authorities might be cited, that while the true measure of damages, in such cases, is the value of the property before any portion was taken, as affected by the taking a portion thereof under the right of eminent domain, or in other words, the difference between the value of the property before any was taken, and the value of the remainder of the property after a portion was so taken, as affected by the taking, considering advantages and disadvantages, yet that in arriving at this matter in order that jurors or viewers may know all the circumstances and elements of damage, witnesses

may testify to specific elements of damages that enter into the whole question of damages. In support of this proposition the following cases are in point: D., H. & W. R. R. Co. v. Gearhart, 81 Pa. 260; Pa. & N. Y. Canal & R. R. Co. v. Madell, 1 W. N. C., 287; D., H. & W. R. R. Co. v. McKelvey, 1 W. N. C. 338.

It is true that a spring flowing out upon lands and through the same upon lands of another, is not like a house, garden or some particular improvement whose value can be properly estimated, and for which the plaintiff alone is entitled to recover for the taking. Still in view of the fact that by cross-examination the defendant brought out the fact of the rights of other parties in the spring or stream flowing from it, and its value under such circumstances, I think it was proper evidence for the consideration of the jury.

Then the court instructed the jury that in determining the damages to the plaintiff by reason of the spring and creek being taken, the whole water power must be considered, taking the value of the whole water power and dividing the same between the plaintiff and the owners of lands lower down the stream as the jury might find the evidence to warrant. And so I think the jury had the proper information upon which to form a just verdict.

The court awarded a new trial unless the amount of the verdict in excess of $5500 was remitted. The plaintiff having remitted all in excess of that sum, judgment was entered for the plaintiff and defendant appealed.

*Error assigned* were (1–4) in admitting testimony as above, quoting the bill of exceptions; (5–8) certain parts of the charge of the court; and (9) that the charge was misleading.

*Thomas F. Diefenderfer*, with him *C. J. Erdman* and *W. W. Watson*, for appellant, cited upon the question of the competency of the witnesses; Michael v. Crescent Pipe Line Co., 159 Pa. 99; Pittsburg & Western Railroad Co. v. Patterson, 107 Pa. 461.

*A. G. Dewalt*, with him *James L. Marsteller*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 4, 1903 :

The four witnesses, the admission of whose testimony is the subject of the first, second, third and fourth assignments, dis-closed a familiarity with the premises and values of land in the community in which this property is situated that made them clearly competent to testify to its value and to estimate the damages sustained by the plaintiff. Yellis's testimony, intro-duced for the purpose of showing one of the several elements of damages, was properly admitted by the trial court. " It has never been said or held," says the court in Danville, Hazleton . and Wilkesbarre Co. v. Gearhart, 81* Pa. 260, " that the ele-ments of computation are not to be given in evidence as the means of enabling the viewers or the jury to reach a just con-clusion upon the whole matter. So to hold would be to con-tradict the act authorizing the view and assessment."

The grant of the water right contained in the deed from Deichman to Yellis was correctly interpreted by the learned trial judge, and his charge relative thereto is not open to ob-jection. The grant gave to Yellis and his assigns the right to have the water of the creek flow unobstructed through the land now owned by the plaintiff and to the grantee's land in the accustomed or natural channel. It did not invest Yellis or his grantee with the right to enter the premises of the plaintiff and take the water. No such authority can be found in the grant. It deprived Deichman of the use of the water for " watering and improving the meadow ground," and prevented him, his heirs, or assigns, from erecting a grist or sawmill along the creek and on the ground now owned by the plaintiff. The trial judge told the jury that such was the effect of the grant and that it gave to the defendant the right to use all the water that flowed through the plaintiff's land and, in the natural channel, entered the defendant's premises. This, of course, included the water that came from the spring on that part of the plaintiff's land now condemned by the defendant com-pany. But, as properly observed by the court, the plaintiff was entitled to have considered as an element of her damages the value of this spring to her land as affected by the right of the defendant company to have its water flow materially un-diminished to the company's land in the channel of the creek as the other water did. These instructions as to the interpre-

tation of the grant and the water rights of the defendant under it were as favorable as the defendant company could reasonably ask.

We are not convinced that, as argued by defendant's counsel, the court in its charge gave undue prominence to the value of the premises as fixed by the plaintiff's witnesses. The court after stating that "a good bit of evidence has been given us as to the nature of this property," directed the attention of the jury in a general way to the maximum and minimum values placed by the witnesses of both parties on the premises before and after the company had appropriated for its use a part of the plaintiff's land. He admonished the jury that they "must consider the evidence of the witnesses themselves and not take it from the court." If, as claimed by the defendant, the plaintiff's witnesses were discredited by their cross-examination, the jury having the whole testimony before them with comments of counsel would, under the charge, be in a position to consider the testimony elicited on cross-examination without special attention being called to it by the court.

The very full and clear opinion filled by the learned trial judge in refusing a new trial relieves us from the necessity of a further discussion of the question raised by the assignments of error.

The judgment is affirmed.